UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| W.T. MECHANICAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| HEATMASTERS, INC., and ) | |
| INTERNAL REVENUE SERVICE, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | 11 C 2482 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Counterclaim-Plaintiff, ) | |
| ) | |
| HEATMASTERS, INC., ) | |
| W.T. MECHANICAL, INC., and ) | |
| BRUCE M. ROSE, ) | |
| ) | |
| Counterclaim-Defendants. ) | |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This case comes before the Court on cross-motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56 by defendant and counterclaim-plaintiff, the United States of America (the "United States"), and counterclaim-defendant Bruce Rose ("Attorney Rose"). Attorney Rose also filed a motion to strike. For the reasons

stated below, the United States' motion is granted and Attorney Rose's motions are denied.

## BACKGROUND[1]

Between October 7, 2002, and September 13, 2004, several federal employment tax assessments were made against W.T. Mechanical, Inc. ("WT Mechanical"). Notices of the assessments, and demands for payment, were sent to WT Mechanical on the dates of the assessments. Despite such notices and demands, WT Mechanical failed to pay the taxes. On January 19, 2005, the Internal Revenue Service (the "IRS") filed a tax lien against WT Mechanical with the Illinois Secretary of State. WT Mechanical is liable to the United States for unpaid federal taxes in the amount of $259,444.32, plus interest and other statutory additions accruing from and after April 15, 2011.[2]

Around May 2003, WT Mechanical asked Attorney Rose to file a lawsuit on its behalf against Heatmasters, Inc. ("Heatmasters") in the Circuit Court of Cook County. Before filing the lawsuit, on June 4, 2003, Attorney Rose agreed to represent WT Mechanical in the litigation against Heatmasters for $150 per hour plus a twenty percent

---

[1] Unless otherwise noted, the following facts are undisputed for purposes of summary judgment. The Court denies Attorney Rose's motion to strike and considers any material facts derived from the Declaration of Sam Randazzo.

[2] WT Mechanical did not file a response to the United States' Motion for Summary Judgment. Accordingly, the Court holds that WT Mechanical is liable to the United States for unpaid federal taxes in the amount of $259,444.32, plus interest and other statutory additions accruing from and after April 15, 2011.

contingency fee. On September 5, 2003, Attorney Rose, on behalf of WT Mechanical, filed the lawsuit against Heatmasters. Approximately eight months after filing the lawsuit, on April 30, 2004, Attorney Rose and WT Mechanical amended their fee agreement, so that Attorney Rose would earn a contingency fee equaling one-third of any recovery against Heatmasters.

From March 2003 to May 2004, Attorney Rose represented WT Mechanical in other matters and wanted to secure payment of his fees from any amount recovered in the case against Heatmasters. For this reason, in May 2004, Attorney Rose and WT Mechanical orally agreed that Attorney Rose would continue to represent WT Mechanical on all other matters for $275 per hour and that WT Mechanical's payment would be deferred until Attorney Rose resolved the case against Heatmasters. WT Mechanical agreed that all of Attorney Rose's fees would "come off the top" of any recovery from Heatmasters. Attorney Rose eventually capped his fees for all hourly matters at $63,000.

On September 12, 2006, Attorney Rose and WT Mechanical again amended their fee agreement. According to Attorney Rose, the amendment memorialized the May 2004 oral agreement, even though it does not expressly refer to the date of the prior oral agreement. Pursuant to the amendment, WT Mechanical would use any money recovered from Heatmasters to first pay Attorney Rose the one-third contingency fee for

work done in that case and then pay Attorney Rose $63,000 for work done in other matters.[3]

In March 2007, WT Mechanical voluntarily dismissed its lawsuit against Heatmasters. The dismissal caused Attorney Rose and WT Mechanical to once more amend the fee agreement on July 26, 2007, to ensure that their previous fee agreement applied to any recovery from Heatmasters at any time, whether through litigation, arbitration, mediation, or otherwise. On February 29, 2008, WT Mechanical filed another lawsuit against Heatmasters in the Circuit Court of Cook County. This subsequent complaint was based on events occurring in 2002 and 2003 and contained allegations similar to those alleged in the original complaint against Heatmasters. On December 15, 2010, WT Mechanical and Heatmasters settled the pending claims for $122,500.

On February 22, 2011, Heatmasters paid the one-third contingency fee directly to Attorney Rose. In March 2011, the IRS was impleaded as a third-party defendant in the

---

[3] The September Amendment also refers to a tax levy served by the IRS on Heatmasters in the amount of $126,000. According to the September Amendment, the IRS, WT Mechanical, and Attorney Rose agreed that the IRS and Attorney Rose would equally share any recovery from Heatmasters up to a gross recovery of $180,000. For amounts recovered in excess of $180,000, Attorney Rose would receive 55% and the IRS would receive 45% of the recovery. The September Amendment elaborated that WT Mechanical assigned to Attorney Rose the right to, and granted Attorney Rose a security interest in, 50% of any recovery not exceeding $180,000 from Heatmasters, plus 55% of any recovery exceeding $180,000, plus 100% of any recovery after the IRS's levy is satisfied until the amount paid to Attorney Rose equals one-third of the gross amount recovered from Heatmasters plus $63,000.

case against Heatmasters, so the court could decide the proper disposition of the remaining $81,670.75 in settlement proceeds. The IRS removed the case to this Court and the IRS and Attorney Rose filed cross-motions for summary judgment. The IRS asserts that it is entitled to all of the remaining settlement proceeds and Attorney Rose contends that he is entitled to $63,000 of the remaining settlement proceeds.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Protective Life Ins. Co. v. Hansen*, 632 F.3d 388, 391-92 (7th Cir. 2011). A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-moving party. *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010). When faced with cross-motions for summary judgment, the court "construe[s] all inferences in favor of the party against whom the motion under consideration is made." *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 359 (7th Cir. 2011).

## DISCUSSION

If a person who is liable to pay a tax neglects or refuses to pay the tax after a demand is made, the amount of the tax is a lien in favor of the United States on all property and rights to property belonging to such person. 26 U.S.C. § 6321. The federal

tax lien arises at the time the assessment is made and continues until the liability is satisfied. 26 U.S.C. § 6322. The federal tax lien is not valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor, until notice of the lien has been properly filed. 26 U.S.C. § 6323(a).

Even if notice has been filed, the federal tax lien is not valid with respect to certain categories of liens which receive a super-priority status, including certain attorneys' liens. 26 U.S.C. § 6323(b)(8). Under Section 6323(b)(8), the federal tax lien is not valid as to settlement proceeds against an attorney who, under local law, holds a lien or contract enforceable against the proceeds, to the extent of his reasonable compensation for procuring the settlement.

The parties dispute the scope of Section 6323(b)(8). Section 6323(b)(8) states that the attorney "holds a lien upon or a contract enforceable against the [settlement] amount, to the extent of his reasonable compensation for . . . procuring such settlement." According to the IRS, the super-priority lien only encompasses the amount owed in connection with procuring the settlement; in this case, the one-third contingency fee. According to Attorney Rose, the super-priority lien encompasses the entire amount secured by the fee agreement, as long as that total amount does not exceed reasonable compensation for procuring the settlement. Attorney Rose contends that, based on his usual hourly rate and the number of hours spent on the case, he devoted over $230,000

in time to procuring the settlement. Under Attorney Rose's interpretation of the statute, the one-third contingency fee plus $63,000 is not unreasonable compensation for procuring the settlement because it is much less than the amount he could have charged on an hourly basis.

The resolution of this issue is a matter of statutory construction and a plain reading of the statute yields support for both interpretations. Because the statute is ambiguous, the Court refers to the legislative intent to aid its interpretation. *See United States v. Hudspeth*, 42 F.3d 1015, 1022 (7th Cir. 1994). The Section 6323(b)(8) attorney's lien encourages attorneys to file lawsuits and obtain judgments that enable their clients to pay their tax liabilities and, in exchange, protects the attorney's right to recover his or her reasonable fees resulting from those efforts. Federal Tax Lien Act of 1966, Pub. L. No. 89-719, 1966 U.S.C.C.A.N. 3722, 3727. By enacting Section 6323(b)(8), Congress intended to grant super-priority status to the fees incurred by an attorney to obtain a judgment or settlement which enhanced the IRS's ability to collect taxes. Accordingly, Attorney Rose's Section 6323(b)(8) lien is limited to the one-third contingency fee, which represents the fees attributed, and amount paid, to Attorney Rose for obtaining the settlement. Affording the $63,000 super-priority status under Section 6323(b)(8) would be unreasonable because such fees were not attributable to procuring

the settlement. Section 6323(b)(8) does not permit an attorney to tack on fees incurred for other matters.

Even though Attorney Rose's interest in the $63,000 is not entitled to super-priority status, Attorney Rose suggests that he holds a security interest or maintains an equitable lien, which benefits from Section 6323(a)[4] and has priority based on the general rule of "the first in time is the first in right."[5] The priority of a federal tax lien is governed by the common law principle that "the first in time is the first in right." *United States v. McDermott*, 507 U.S. 447, 449 (1993). For purposes of "first in time" priority against a competing state interest benefitting from Section 6323(a), the federal tax lien is dated from the time of its filing. *Id.* at 454. The competing state interest comes into existence for "first in time" purposes once it is perfected, meaning that the identity of the lienor, the property subject to the lien, and the amount of the lien must be established. *Id.* at 449. Moreover, when dealing with property subsequently acquired by the debtor, the state lien attaches to the property when the debtor acquires rights in the property. *Id.* at 452-53.

---

[4] Under Section 6323(a), the federal tax lien is not valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor, until notice of the federal lien has been filed.

[5] The Court does not decide whether Attorney Rose had either a security interest or equitable lien on the settlement proceeds or whether any such interest benefits from Section 6323(a). Even assuming Attorney Rose had a security interest or equitable lien which benefits from Section 6323(a), Attorney Rose failed to perfect the security interest or equitable lien before the United States filed notice of the federal tax lien.

Here, notice of the federal tax lien was filed on January 19, 2005. While Attorney Rose argues that his interest came into existence upon the May 2004 oral agreement, any such interest was not yet perfected since the amount of the lien was uncertain[6] and no evidence suggests that the amount became certain prior to the date that the United States filed notice of the federal tax lien. Further, any secured interest could not attach to the recovery from Heatmasters until WT Mechanical acquired rights in the settlement proceeds when Heatmasters and WT Mechanical agreed to settle the case on December 15, 2010. Finally, Attorney Rose's purported interest is inferior to the federal tax lien for an additional reason. Attorney Rose roots his interest in the May 2004 oral agreement and represents that the agreement entitled him to a unified fee composed of the one-third contingency fee and the hourly fees. Illinois Rule of Professional Conduct 1.5(c) requires a contingent fee agreement to be in writing. Since Attorney Rose amended the former contingent fee agreement, he was required to document the May 2004 oral agreement in writing. *See* Ill. Rules of Prof'l Conduct R. 1.5(c). As such, no security interest or equitable lien could arise

---

[6] For matters other than the case against Heatmasters, Attorney Rose agreed to represent WT Mechanical for $275 per hour. At the time of this agreement, Attorney Rose continued to work on other matters at the hourly rate. At a later date, Attorney Rose capped his fees for these other matters at $63,000. The undisputed facts demonstrate that Attorney Rose had capped his fees by September 12, 2006, the date Attorney Rose and WT Mechanical memorialized the May 2004 oral agreement. By the time Attorney Rose capped his fees at $63,000, the United States had already filed notice of the federal tax lien.

until the agreement was memorialized on September 12, 2006. *See, e.g., McKee-Berger-Mansueto, Inc. v. Bd. of Educ. of Chi.*, 691 F.2d 828, 837 (7th Cir. 1982) (finding that equitable lien arose on the date the contingent fee contract was executed). Thus, any interest, perfected or not, arose after the United States filed notice of the federal tax lien. *See McDermott*, 507 U.S. at 449; *see also Capuano v. United States*, 955 F.2d 1427, 1432 (11th Cir. 1992) (explaining that a federal tax lien is superior to any interest not perfected at the time notice of the federal lien is filed). Since the federal tax lien's priority date precedes the state lien's priority date, the federal tax lien has priority.

## CONCLUSION

For the foregoing reasons, this Court denies Attorney Rose's motion for summary judgment and motion to strike and grants the United States' motion for summary judgment.

/s/ Charles P. Kocoras
_____
Charles P. Kocoras
United States District Judge

Dated:  September 15, 2011